Juanita **BURNA**, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 487.

United States District Court
E. D. Virginia, Newport News Division.
July 13, 1956.

Taylor & Ellenson, Newport News, Va., Louis Ellenson, Newport News, Va., for plaintiff.

L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., John M. Hollis, Asst. U. S. Atty., Norfolk, Va., for defendant.

HOFFMAN, District Judge.

Plaintiff, a citizen of the United States, was injured by the alleged negligence of a United States Government owned and operated vehicle on the Island of Okinawa in the Ryukyus on October 5, 1954. She has instituted this action under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b). The United States has filed a motion to dismiss under the provisions of 28 U.S.C.A. § 2680(k) excluding the application of the Federal Tort Claims Act as to "Any claim arising in a foreign country".

It is urged that the Treaty of Peace with Japan, entered into force on April 28, 1952, has the effect of eliminating the Island of Okinawa from the status of a "foreign country" by reason of Chapter II, Article 3, of said Treaty reading as follows:

"Japan will concur in any proposal of the United States to the United Nations to place under its trusteeship system, with the United States as the sole administering authority, Nansei Shoto south of 29° north latitude (including the Ryukyu Islands and the Daito Islands), Nanpo Shoto south of Sofu Gan (including the Bonin Islands, Rosario Island and the Volcano Islands) and Parece Vela and Marcus Island. Pending the making of such a proposal and affirmative action thereon, the United States will have the right to exercise all and any powers of administration, legislation and jurisdiction over the territory and inhabitants of these islands, including their territorial waters."

■ Was it the intent of Congress, in enacting the Federal Tort Claims Act, to extend its jurisdiction to the Island of Okinawa under such circumstances? It is obvious to this Court that the an-swer must be in the negative and the motion to dismiss sustained.

Mr. John Foster Dulles, in his capacity as United States Delegate to the Japanese Peace Conference, made a statement on September 5, 1951, with regard to the relation of the island to Japan, as follows:

"Article III deals with the Ryukyus and other islands to the south and southeast of Japan. These, since the surrender, have been under the sole administration of the United States.

"Several of the Allied Powers urged that the treaty should require Japan to renounce its sovereignty over these islands in favor of United States sovereignty. Others suggested that these islands should be completely restored to Japan.

"In the face of this division of Allied opinion, the United States felt that the best formula would be to permit Japan to retain residual sovereignty * * *"

At the time of plaintiff's accident no arrangement had been made between the United States and the United Nations regarding the trusteeship of the Ryukyu Islands. Okinawa was, therefore, under the provisional administration of the United States Government, although Japanese laws in force on April 1, 1945, as applied to the Ryukyu Islands, are still in effect. See: Collection of Current Law and Statutes of Ryukyu, published September, 1953.

■ In Curtis v. United States, D.C., 117 F.Supp. 912, 913, the Court, in referring to the Federal Tort Claims Act, has this to say:

"The Act, which in effect waives the immunity of the United States from suit, generally speaking must be strictly construed."

While United States v. Spelar, 338 U.S. 217, 70 S.Ct. 10, 12, 94 L.Ed. 3, was decided prior to the effective date of the Treaty of Peace with Japan, it is

nevertheless controlling on the principles invoked. In reversing a decision of the Court of Appeals for the Second Circuit, 171 F.2d 208, the Supreme Court held that an action under the Federal Tort Claims Act could not be maintained for a wrongful death occurring at a Newfoundland air base under a long-term lease to the United States. The Court also said:

"In brief, though Congress was ready to lay aside a great portion of the sovereign's ancient and unquestioned immunity from suit, it was unwilling to subject the United States to liabilities depending upon the laws of a foreign power. The legislative will must be respected. The present suit, premised entirely upon Newfoundland's law, may not be asserted against the United States in contravention of that will."

Thus it will be seen that, if this action can be maintained, the local laws of Japan would be controlling. Such a conclusion would be directly contrary to the expression of the Supreme Court of the United States in United States v. Spelar, supra.

The Treaty of Peace with Japan was the subject of discussion in United States v. Ushi Shiroma, D.C., 123 F.Supp. 145. The District Court held that Japan retained de jure sovereignty over Okinawa and that a person born in Okinawa of Okinawan parents did not become a national of the United States. This case points out that, prior to the signing of the Treaty, Okinawa was deemed a "foreign country" within the meaning of the Federal Tort Claims Act. Cobb v. United States, 9 Cir., 191 F.2d 604, certiorari denied 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683; Brewer v. United States, D.C., 79 F.Supp. 405. The fact that an interpretation of the Treaty of Peace apparently places the residual sovereignty in Japan is sufficient to conclude that the Island of Okinawa is still a "foreign country" within the meaning of the Federal Tort Claims Act.

Cases arising prior to the effective date of the Treaty of Peace with Japan, while not controlling, are of some aid in determining the question involved. In Brunell v. United States, D.C., 77 F.Supp. 68, 70, the Island of Saipan was under a Trusteeship Agreement between the United States as administering authority and the Security Council of the United Nations. The Honorable Tom C. Clark, then Attorney General of the United States and now Associate Justice of the Supreme Court of the United States, rendered an opinion to the effect that "'Saipan has not been and is not a part of the United States, nor a territory or possession of the United States'". The Court further expressed the view that the term "foreign country" in the Federal Tort Claims Act limited the operation of the act to areas which were actually a component part or a political subdivision of the United States.

Other authorities touching on the subject are Hichino Uyeno v. Acheson, D.C., 96 F.Supp. 510, and Brewer v. United States, supra.

With due deference to the merits of plaintiff's claim, her only recourse appears to be through the appropriate Congressional committee.

An order will be prepared by the United States Attorney and, after presentation to counsel for plaintiff for inspection, delivered to the Court for entry.